UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GRAZYNA H. CHRISTMAN,

                Plaintiff,

v.                                          6:06-CV-1392
                                            (GTS/GHL)
UTICA NATIONAL INSURANCE
GROUP, INC.,

                Defendant.
_____

APPEARANCES:                              OF COUNSEL:

GRAZYNA H. CHRISTMAN
 Plaintiff, *Pro Se*
450 Elmdale Ave.
Utica, NY 13502

GETNICK LIVINGSTON ATKINSON         JOSEPH A. DeTRAGLIA, ESQ.
GIGLIOTTI & PRIORE, LLP
 Counsel for Defendant
258 Genesee Street Suite 401
Utica , NY 13502

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court in this employment discrimination action are the following seven motions: (1) Defendant's motion for summary judgment (Dkt. No. 30); (2) Plaintiff's motion to reopen discovery in order to obtain the disclosure of the personnel records of three employees (Dkt. No. 38); (3) Plaintiff's first motion for sanctions against defense counsel for, *inter alia*, willfully failing to produce the records in question (Dkt. No. 46); (4) Defendant's first motion for a protective order limiting any remaining disclosure obligations, which it may be deemed to have, to computerized searches and prohibiting Plaintiff from disclosing any

confidential information she obtains (Dkt. No. 47); (5) Defendant's second motion for a protective order requiring Plaintiff to return to Defendant all privileged and/or inadvertently disclosed materials received by Plaintiff in electronic form, including a DVD inadvertently containing a small number of privileged emails (Dkt. No. 52); (6) Plaintiff's motion to compel the disclosure of the above-referenced personnel records of three employees (Dkt. No. 63); and (7) Plaintiff's second motion for sanctions for, *inter alia*, making material misrepresentations to the Court in his motion and response papers (Dkt. No. 64).

For the reasons set forth below, the Court rules as follows: (1) Defendant's motion for summary judgment (Dkt. No. 30) is GRANTED; (2) Plaintiff's motion to reopen discovery (Dkt. No. 38) is DENIED; (3) Plaintiff's first motion for sanctions against defense counsel (Dkt. No. 46) is DENIED; (4) Defendant's first motion for a protective order (Dkt. No. 47) is DENIED as moot; (5) Defendant's second motion for a protective order (Dkt. No. 52) is GRANTED to the extent that it requests that Plaintiff be ordered to return to Defendant the DVD in question, but is otherwise DENIED; (6) Plaintiff's motion to compel disclosure of personnel records (Dkt. No. 63) is DENIED; and (7) Plaintiff's second motion for sanctions (Dkt. No. 64) is DENIED. As a result, Plaintiff's Complaint is dismissed in its entirety, and Plaintiff is ordered to return to Defendant the above-described DVD within seven (7) days of this Decision and Order.

I.  **RELEVANT BACKGROUND**

   A.  **Procedural History**

On November 16, 2006, Plaintiff filed a Complaint alleging that Defendant violated her following rights by terminating her employment under the pretext of poor performance: (1) her rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.; (2)

her rights under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq*.; and (3) her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101.  (*See* Dkt. No. 1.)

On November 5, 2007, discovery in this action closed.  (Dkt. Nos. 12-14.)  On January 24, 2008, Stefan D. Berg, Esq., requested permission to withdraw as counsel for Plaintiff.  (Dkt. No. 15.)  On February 8, 2008, the Court granted Mr. Berg's request.  (Dkt. No. 20.)

On April 3, 2008, Defendant moved for summary judgment.  (Dkt. No. 30.)  Plaintiff requested, and was granted, four (4) extensions of deadline by which to respond to Defendant's motion.  On May 28, 2008 (the final day in which she had to respond to the motion), Plaintiff filed her response to Defendant's motion.  (Dkt. No. 39.)

On the same day that she filed her response, Plaintiff also filed a motion to reopen discovery–more than four (4) months after the discovery deadline had passed.  (Dkt. No. 38.)  In her motion papers, Plaintiff argues that, although Mr. Berg had requested the personnel records of three individuals during discovery, these records were never produced.  (*Id*. at 1-2.)  Plaintiff also argues that these documents are material to her case, because of the circumstances that surrounded the hiring of two of the individuals, and the decision not to hire the third individual.  (*Id*.)

In response to Plaintiff's motion to reopen discovery, Defendant argues that Plaintiff's motion should be denied for four reasons.  First, argues Defendant, Plaintiff failed to articulate any reason for needing the records other than that "they will allegedly show circumstances that surrounded [the] hiring of Mr. Raga and Mrs. Krug, but not hiring Martha Dumont by Michael Evolo."  (Dkt. No. 43, at 1.)  In support of its argument, Defendant points out that Plaintiff has not alleged in her Complaint a claim for failure to hire, which makes records of whom Plaintiff's

3

former supervisor may or may not have hired irrelevant to Plaintiff's action.  (*Id*. at 1-2.)  Second, argues Defendant, because only Mr. Raga worked under Mr. Evolo during the same time period as did Plaintiff, the request of the personnel records of the other two individuals is "not only irrelevant, but also completely inappropriate and would violate their rights to privacy and confidentiality."  (*Id*. at 2.)  Third, argues Defendant, it already provided Mr. Raga's records to Plaintiff "during the extensive investigation of [Plaintiff's] identical discrimination claims before the New York State Division of Human Rights."  (*Id*.)  Defendant also indicates that it provided redacted copies of Mr. Evolo's evaluations of the one other employee he supervised besides Plaintiff and Mr. Raga during Plaintiff's employment with Defendant.  (*Id*.)  Defendant states that these documents were used by Plaintiff during her deposition of Mr. Evolo.  (*Id*.)  Fourth, and finally, argues Defendant, Plaintiff failed to comply with Fed. R. Civ. P. 56(f) when she did not file an affidavit with her motion to compel.  (*Id*.)

On July 31, 2008, Plaintiff filed a motion for sanctions under Fed. R. Civ. P. 11, based on defense counsel's conduct throughout litigation, with particular focus on counsel's actions once Plaintiff became *pro se*.  (Dkt. No. 46.)

On August 8, 2008, Defendant filed a motion for a protective order limiting any remaining disclosure obligations, which it may be deemed to have, to computerized searches and prohibiting Plaintiff from disclosing any confidential information she obtains.  (Dkt. No. 47.)  In its motion, Defendant argues that it has already disclosed approximately six thousand (6,000) pages of requested materials, and that requiring disclosure of any paper documents would be unduly burdensome.  (Dkt. No. 47, at 2.)  In addition, Defendant argues that it "intends to turn over any additional emails it finds[,]" noting that it is not trying to hide any materials, but that

4

the search process is burdensome and time consuming.  (*Id*. at 3-4.)

On September 12, 2008, Defendant filed a second motion for a protective order.  (Dkt. No. 52.)  In its motion, Defendant seeks "an Order requiring Plaintiff to return to Defendant a DVD which inadvertently disclosed privileged and other emails falling outside the scope of the Court's Order dated February 8, 2008."  (Dkt. No. 53.)

On October 2, 2008, this case was then reassigned to the undersigned.  (Dkt. No. 56.)

On November 4, 2008, Plaintiff filed a motion to compel disclosure of the same personnel records sought in the motion to reopen discovery.  (Dkt. No. 63.)

On the same day, Plaintiff also filed a second motion for Fed. R. Civ. P. 11 sanctions against defense counsel for, *inter alia*, making material misrepresentations to the Court in his motion and response papers.  (Dkt. No. 64.)

### B.     Statement of Undisputed Material Facts

For the sake of brevity, the Court will only provide a brief recitation of the undisputed material facts on Defendant's motion for summary judgment.

Plaintiff was hired by Defendant on June 28, 1990.  (*Compare* Dkt. No. 30, Part 2, ¶ 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 1 [Plf.'s Rule 7.1 Response].)   On March 3, 1995, Plaintiff was transferred to the corporate accounting department, where Plaintiff held the title of Junior Accountant.  (*Compare* Dkt. No. 30, Part 2, ¶¶ 4-5 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶¶ 4-5 [Plf.'s Rule 7.1 Response].)  Plaintiff held this position throughout the remainder of her employment with Defendant.  (*Compare* Dkt. No. 30, Part 2, ¶ 6 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 6 [Plf.'s Rule 7.1 Response].)

In the Fall of 2002, Defendant restructured some of its departments.  (*Compare* Dkt. No.

30, Part 2, ¶ 7 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 7 [Plf.'s Rule 7.1 Response].)  As a result, reinsurance accounting was reorganized into a new department known as the reinsurance accounting unit.  (*Compare* Dkt. No. 30, Part 2, ¶ 8 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 8 [Plf.'s Rule 7.1 Response].)  Michael Evolo was made supervisor of this unit.  (*Compare* Dkt. No. 30, Part 2, ¶ 9 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 9 [Plf.'s Rule 7.1 Response].)  Three employees, including Plaintiff, reported to Mr. Evolo.  (*Compare* Dkt. No. 30, Part 2, ¶ 10 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 10 [Plf.'s Rule 7.1 Response].)  In August 2003, Mr. Evolo evaluated Plaintiff after reviewing her performance for about ten (10) months.  (*Compare* Dkt. No. 30, Part 2, ¶ 13 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 13 [Plf.'s Rule 7.1 Response].)  This resulted in an overall performance rating of "3" (which means that she "meets expectations of the position.").  (*Compare* Dkt. No. 30, Part 2, ¶ 14 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 14 [Plf.'s Rule 7.1 Response].)  Plaintiff stated in her deposition that "the 2003 review was not biased [but] . . . was consistent with the reviews that [she] was getting for the previous years with [Defendant]."  (*Compare* Dkt. No. 30, Part 2, ¶ 15 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 15 [Plf.'s Rule 7.1 Response].)

During this same time period, Mr. Evolo evaluated an Accountant II co-worker of Plaintiff after reviewing his performance for about ten months.  (*Compare* Dkt. No. 30, Part 2, ¶ 16 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 16 [Plf.'s Rule 7.1 Response].)  This resulted in an overall performance rating for Accountant II of "2" (which means that she "does not fully meet the expectations of the position.").  (*Compare* Dkt. No. 30, Part 2, ¶ 17 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 17 [Plf.'s Rule 7.1 Response].)  Subsequent to

2003, Mr. Evolo gave Plaintiff performance evaluations that indicated that her performance was declining.  (*Compare* Dkt. No. 30, Part 2, ¶ 19 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 19 [Plf.'s Rule 7.1 Response].)   On May 11, 2004, Mr. Evolo and Plaintiff discussed her job performance and Mr. Evolo gave Plaintiff a written memorandum "identifying certain areas of [Plaintiff's] performance that need immediate improvement."  (*Compare* Dkt. No. 30, Part 2, ¶ 20 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 20 [Plf.'s Rule 7.1 Response].)   On June 8, 2004, Mr. Evolo sent Plaintiff an email, again outlining the need for improvement in several areas of her job performance.  (*Compare* Dkt. No. 30, Part 2, ¶ 21 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 21 [Plf.'s Rule 7.1 Response].)   In July 2004, Mr. Evolo provided an annual evaluation of Plaintiff.  (*Compare* Dkt. No. 30, Part 2, ¶ 22 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 22 [Plf.'s Rule 7.1 Response].)   In that review, he rated her overall performance as a "2."  (*Compare* Dkt. No. 30, Part 2, ¶ 23 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 23 [Plf.'s Rule 7.1 Response].)   In that same month, Mr. Evolo rated the overall performance of Accountant II as a "3."  (*Compare* Dkt. No. 30, Part 2, ¶ 24 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 24 [Plf.'s Rule 7.1 Response].)   On August 10, 2004, Plaintiff again received a written memorandum from Mr. Evolo which indicated the need for Plaintiff to "improve [her] technical performance."  (*Compare* Dkt. No. 30, Part 2, ¶ 25 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 25 [Plf.'s Rule 7.1 Response].)

On January 6, 2005, Plaintiff, Mr. Evolo and Mr. Evolo's supervisor met to discuss Plaintiff's job performance, and Plaintiff was put on probation and given a written warning. (*Compare* Dkt. No. 30, Part 2, ¶ 26 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 26 [Plf.'s Rule 7.1 Response].)   On February 21, 2005, Defendant terminated Plaintiff's

employment.  (*Compare* Dkt. No. 30, Part 2, ¶ 29 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 40, Part 1, ¶ 29 [Plf.'s Rule 7.1 Response].)  Throughout her employment, Plaintiff frequently coughed as a result of a "throat condition."  (Dkt. No. 1 at 4.)  Plaintiff believes that this "throat condition" constitutes a disability within the meaning of the ADA.  (Dkt. No. 1, at 4-5.)

## II.     LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

As for the *materiality* requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248 [citation omitted].

As for the *genuineness* requirement, a dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party."  *Id*.  As a

8

result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a *genuine* issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted; emphasis added]; *see also* Fed. R. Civ. P. 56(e)(2).[1]  Similarly, inadmissible hearsay is insufficient to create a *genuine* issue of fact, "absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) [citations omitted].  Moreover, "an affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony" is insufficient to create a *genuine* issue of fact.  *Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) [citations omitted].

### III. DISCUSSION

#### A. Plaintiff's Motion to Reopen Discovery, Her Motion to Compel Disclosure of Personnel Files, Her Two Motions for Sanctions, and Defendant's First Motion for a Protective Order

"To request discovery under Rule 56(f), a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (citing *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 422 [2d Cir. 1989]).  A district court may deny a discovery request where "the additional discovery would not have precluded summary judgment." *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839,

---

[1]  As the Supreme Court has famously explained, "[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986) [citations omitted].

844 (9th Cir. 1994). Stated another way, "[n]o discovery . . . is necessary where [the requesting party] cannot establish an essential element of their cause of action or where [that party] fail[s] to create a material issue of fact." *Crossland Federal Sav. Bank v. by F.D.I.C. v. 114 East Realty Co.*, 93-CV-2925, 1994 WL 30460, at *4 (S.D.N.Y. Jan. 28, 1994) (citing *Burke v. Bevona*, 931 F.2d 998, 1002 [2d Cir. 1991]).

After carefully considering the matter, the Court concludes that Plaintiff's motion to reopen discovery, her motion to compel the disclosure of personnel files, and her two motions for sanctions should be denied (and that Defendant's first motion for a protective order should therefore be denied as moot) for four reasons. First, Plaintiff failed to comply with Fed. R. Civ. P. 56(f) by not filing an affidavit with her motion, which in and of itself is grounds for denying her motion.[2]

Second, the Court finds, based on the record evidence, that the materials that Plaintiff has requested are not reasonably expected to raise a genuine issue of material fact. Indeed, her argument that the materials would do so is entirely speculative in nature. The Court notes that the flaws with Plaintiff's claims are discussed below in Part III.B. of this Decision and Order. The Court notes also that Plaintiff's former attorney, Mr. Berg, represented Plaintiff throughout

---

[2] The Court acknowledges that the special leniency normally afforded to *pro se* litigants may somewhat loosen the Court's procedural rules. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). However, that special leniency does not completely relieve a *pro se* litigant of the duty to comply with those procedural rules. Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in the Federal Rules of Civil Procedure (and Local Rules of Practice) are procedural rules that even *pro se* litigants must follow. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). The Court also notes that Plaintiff received a copy of the Pro Se Manuel on February 8, 2008, more than two months before she filed her motion to compel.

discovery. When Defendant did not provide the materials in response to Plaintiff's request for them, Mr. Berg decided not to file a motion to compel. At the very least, this raises a significant doubt, in the Court's view, as to the necessity of the materials.

Third, as pointed out by defense counsel, Plaintiff has already been provided the personnel records of one of the three employees (Mr. Raga). As a result, she does not need them to be again produced by Defendant.

Fourth, and finally, Defendant provided approximately six thousand (6,000) pages of requested materials to Plaintiff during discovery, which evidences the fact that Defendant's failure to turn over the requested materials does not amount to bad faith, or anything that resembles sanctionable activity.

For all of these reasons, Plaintiff's motion to reopen discovery (Dkt. No. 38) is denied; her motion to compel the disclosure of personnel records (Dkt. No. 63) is denied; her Plaintiff's first motion for sanctions against defense counsel (Dkt. No. 46) is denied; her second motion for sanctions against defense counsel (Dkt. No. 64) is denied; and Defendant's first motion for a protective order (Dkt. No. 47) is denied as moot.

    **B.**    **Defendant's Motion for Summary Judgment**

        **1.**    **Plaintiff's ADA Claim**

In its motion for summary judgment, Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination under the ADA because Plaintiff is unable to meet the second or fourth prongs of the test. (Dkt. No. 31, at 6.) In response, Plaintiff argues that she has met her burden of establishing a prima facie case of discrimination, has met her burden of showing pretext, and has produced evidence of disparate treatment. (Dkt. No. 39, at 5-7.)

Having reviewed all the evidence, the Court concludes that Plaintiff has not met her prima facie burden under the ADA, and that, in the alternative, she has not demonstrated that her termination because of poor work performance was a pretext for discrimination.

In disability discrimination cases, courts apply the three-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  First, the plaintiff must establish a prima facie case.  *McDonnell Douglas Corp.*, 411 U.S. at 802-04.  If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to demonstrate a legitimate non-discriminatory reason for its actions.  *Id.*  Once the defendant offers a legitimate non-discriminatory reason, in order to prevail, the plaintiff must show that the proffered reason is nothing but a pretext for intentional discrimination.  *Id.*  Despite the fact that the burden of production may shift, at all times the plaintiff maintains the burden of persuasion, and therefore, in order to withstand summary judgment stage, the plaintiff "must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1225 (2d Cir. 1994).

"A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a prima facie case."  *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir. 1998) [citation omitted].  "To satisfy this burden, plaintiff must establish that (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability."

*Cody v. County of Nassau*, 577 F. Supp.2d 623, 637 (E.D.N.Y. 2008) [citations omitted].  "Not every impairment is a 'disability' within the meaning of the ADA; rather, there are two requirements: the impairment must limit a major life activity and the limitation must be substantial."  *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005).

In her Complaint, Plaintiff alleges that she frequently coughed as a result of a throat condition for which she had surgery.  (Dkt. No. 1 at 4-5.)  At her deposition, Plaintiff testified that her disability was her "impaired condition, the urge to cough beyond my control."  (Dkt. No. 30, Part 4, at 26 [Plf's Dep. Tr. 24:8-9].)  Plaintiff admitted in her deposition that her "impaired condition" did not prevent her from doing any daily life activities.  (Dkt. No. 30, Part 4, at 26 [Plf's Dep. Tr. 24:10-12].)  In addition, Plaintiff testified that her medical condition did not limit her ability to perform her job duties.  (Dkt. No. 30, Part 4, at 27 [Plf's Dep. Tr. 25:6-8].)  Plaintiff also testified that she did not believe the Company was at fault for her medical condition, stating that her condition was "not related to [her] employment."  (Dkt. No. 30, Part 4, at 27 [Plf's Dep. Tr. 25:9-11].)  Because Plaintiff cannot establish that her cough was a substantial impairment that limited a major life activity, Plaintiff cannot meet her prima facie burden of demonstrating that she had a disability within the meaning of the ADA.  The fact that Defendant failed to turn over the requested materials is therefore irrelevant.

In the alternative, even if Plaintiff had demonstrated that her cough amounted to a disability within the meaning of the ADA, the Court finds that Plaintiff has failed to offer evidence that she was terminated because of her cough.  Finally, and most importantly, even if the Court were to find that Plaintiff had met her prima facie burden under the ADA (which it does not find), Plaintiff's claim would fail because Defendant offered a non-discriminatory

13

reason for her termination–i.e. poor work performance–and she has not demonstrated any record evidence that this allegation of poor work performance is a pretext for discrimination.[3]

### 2. Plaintiff's ADEA and Title VII Claims

"On a motion for summary judgment, claims of discrimination under Title VII, Section 1981, the ADEA, the NYSHRL, and the NYSCRL are analyzed under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Davis v. Avaya, Inc.*, 295 F. App'x. 380, 381 (2d Cir. Oct 2, 2008). Under this framework, in order for a Plaintiff to survive summary judgment, she must first make out a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802-804. In order to make out a prima facie case, Plaintiff must demonstrate the following: "(1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). Further, the protected classification "must have actually played a role in" the employer's decision making process and had a determinative influence on the outcome. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000) [citation and internal quotation omitted].

---

[3] The Court notes that there is copious documentation that reflects the decline in Plaintiff's work, Mr. Evolo's efforts to work with Plaintiff, and Mr. Evolo's explanations of why Plaintiff's work performance was poor. (*See* Dkt. No 30, Part 4, at 39-54.) In addition, NYSDHR's dismissal of Plaintiff's discrimination complaint stated that its investigation "failed to reveal that [Plaintiff] was subjected to disparate treatment with regards to tasks and performance standards . . . between August, 2003 and January, 2005, [when Plaintiff] was counseled on at least six occasions for unsatisfactory performance and given suggestions for improvement . . . ." The investigation also noted that "[others] were evaluated on the same criteria . . . and [Plaintiff] was terminated because she failed to improve on her work performance and not because of her age, gender, or disability." (*See* Dkt. No. 30, Part 4, at 19-21 [DeTraglia Affidavit Exhibit C].).

The record evidence demonstrates that Plaintiff fails the second prong of the test in that she was not satisfactorily performing her job at the time of her termination. Plaintiff also fails the fourth prong because the evidence establishes that Plaintiff's supervisor filled Plaintiff's position by employing a woman over forty (40) years of age. (Dkt. No. 31, Part 2, at 28 [Evolo Dep. Tr. 54:11-19].) Furthermore, Plaintiff admitted during her deposition that her supervisor had never made any comments to her concerning her age or gender. (Dkt. No. 30, Part 4, at 28 [Plf's Dep. Tr. 38:9-14].) In sum, even if the requested personnel records demonstrate evidence of discriminatory hiring practices, the records do not help Plaintiff overcome the necessary element of satisfactory job performance, nor do they address the filling of the position that Plaintiff was terminated from. As a result, Plaintiff cannot establish a prima facie case.

In the alternative, even if the Court found that Plaintiff established a prima facie case under the ADEA and Title VII, Defendant has asserted a legitimate, non-discriminatory reason for its action, which Plaintiff cannot show to be pretextual. The law is clear that, to survive summary judgment, once a Plaintiff makes out her prima facie face, the Employer must simply demonstrate a non-discriminatory reason for termination, such as poor work performance.[4] Once an Employer does this, the burden falls squarely on Plaintiff to show that the Employer did not

---

[4] If the plaintiff is able to meet her burden of establishing a prima facie case, "the burden of production then shifts to the defendant who must proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) [citation omitted]. At this stage, "[t]he employer merely needs to 'explain what he has done.'" *Sanzo v. Uniondale Union Free School Dist.*, 381 F. Supp.2d 113, 117-18 (E.D.N.Y. 2005) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 [1981]). Poor job performance, which includes poor communication with supervisors, as well as the desire to promote efficiency, constitute "legitimate, clear, specific and non-discriminatory reason[s]" for termination. *Potenza v. City of New York Dept. of Transp.*, 00-CV-0707, 2001 WL 1267172, at *6 (S.D.N.Y. Oct. 23, 2001).

terminate her employment based on the well-documented unsatisfactory job performance.[5]

Here, Plaintiff simply cannot meet her burden.  The record evidence establishes that Plaintiff's work performance had been declining for a significant period of time.  (*See* Dkt. No. 31, Part 2, at 30-48.)  Despite numerous attempts at corrective action by Defendant, however, Plaintiff's performance did not improve to an acceptable level, and her employment was terminated.  Although Plaintiff may allege that her supervisor was biased, she has not adduced any specific evidence of bias sufficient to withstand summary judgment.  In fact, the record evidence is directly to the contrary in that her supervisor consistently applied Defendant's uniform performance standards toward his subordinates.

For all of these reasons, Defendant's motion for summary judgment (Dkt. No. 30) is granted.

### C. Defendant's Second Motion for a Protective Order

On September 12, 2008, Defendant filed a second motion for a protective order.  (Dkt. No. 52.)  In its affidavit submitted in support of its motion, Defendant indicated that, while attempting to provide Plaintiff with certain documentation that she requested after the close of discovery, which the Court addressed in its Order dated February 8, 2008, Defendant inadvertently disclosed privileged and other emails falling outside the scope of the Order.  (Dkt.

---

[5] Should the employer satisfy its burden, "the presumption [of discrimination], having fulfilled its role of forcing the defendant to come forward with some [non-discriminatory] response, simply drops out of the picture." *Greenway*, 143 F.3d at 52 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)) (first alteration in original).  As a result, the "ultimate burden" shifts back to the plaintiff, who must prove that "the employer's proffered reason is merely a pretext for its intentional discrimination." *Greenway*, 143 F.3d at 52 [citations omitted].  "If the plaintiff cannot prove intentional discrimination motivated by [her] disability, then the defendants are entitled to summary judgment." *Sanzo*, 381 F. Supp.2d at 118.

No. 53.) Defendant therefore requested in its second motion for a protective order that Plaintiff be ordered to return to it the DVD that contains information that is outside the scope of the Court's Order. Because the information contained on this DVD is Defendant's work product, and because the Court concludes that granting summary judgment in Defendant's favor is appropriate, the Court finds that there is no reason for Plaintiff to continue to possess these materials. As a result, Plaintiff is ordered to return to Defendant the above described DVD within seven (7) days of this Decision and Order. If she fails to do so, the Court will entertain a motion by Defendant for the imposition of sanctions against Plaintiff, including monetary sanctions.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 30) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion to reopen discovery (Dkt. No. 38) is **DENIED**; and it is further

**ORDERED** that Plaintiff's first motion for sanctions (Dkt. No. 46) is **DENIED**; and it is further

**ORDERED** that Defendant's first motion for a protective order (Dkt. No. 47) is **DENIED** as moot; and it is further

**ORDERED** that Plaintiff's motion to compel the disclosure of the personnel records of three employees (Dkt. No. 63) is **DENIED**; and it is further

**ORDERED** that Plaintiff's second motion for sanctions (Dkt. No. 64) is **DENIED**; and it is further

**ORDERED** that Defendant's second motion for a protective order (Dkt. No. 52) is **GRANTED** to the extent that it requests that Plaintiff be ordered to return to Defendant the DVD in question, but is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff shall deliver to Defendant the requested DVD within seven (7) days of this Decision and Order.  If she fails to do so, the Court will entertain a motion by Defendant for the imposition of sanctions against Plaintiff, including monetary sanctions; and it is further

**ORDERED** that, when Defendant receives the DVD in question, it shall file with the Court a letter stating that fact, whereupon a judgment shall be issued and this action shall be closed.

Dated: March 27, 2009
 Syracuse, New York

_____
Hon. Glenn T. Suddaby
U.S. District Judge